**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Coral Jones,                                                    Case No. 3:14CV911

      Plaintiff,

      v.                                                        **ORDER**

Toledo Public Schools, et al.,

      Defendant.


This is a race and sex discrimination action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., and state-law whistleblower and assault claims between plaintiff Coral Jones, a former teacher at Lagrange Elementary School in Toledo, Ohio, and various defendants, including the Toledo Public School District (District).

Pending is defendants' motion for summary judgment and/or judgment on the pleadings. (Doc. 18). I have jurisdiction under 28 U.S.C. § 1331.

For the reasons that follow, I grant the motion.

### Background

The District hired Jones in the fall of 2008 as a classroom teacher. (Doc. 17-1 at 47). Effective September 30, 2008, the District assigned Jones to teach first grade at Lagrange Elementary School. (*Id.*).

While employed by the District, Jones was a member of the Toledo Federation of Teachers Union (Union). The collective bargaining agreement between the Union and the Toledo Public

Schools Board of Education provides for an agreed-upon system for evaluating teachers entitled "The Toledo Plan: Intern, Intervention, Evaluation" (Toledo Plan). (*Id.* at 46-47 & Exs. 17 (A), (B)).

Under the Toledo Plan, a teacher's first two semesters of teaching are as an "intern teacher." (*Id.* at 48). During those intern semesters, an experienced teacher acts as the intern's "consulting teacher" and together they set goals for the intern's improvement. (*Id.*). The principal's role during the intern semesters is limited to providing a summary evaluation of the intern teacher's adherence to policy, punctuality, and cooperation with parents and school personnel. (*Id.*).

Although Jones' initial evaluations were satisfactory, problems surfaced in 2009. Jones' principal, defendant Gary Forquer, noted on her evaluation dated March 4, 2009 that Jones alienated staff by accusing a staff member of hitting her. (*Id.* at 50 & Ex. 17). Forquer investigated Jones' allegations and found them unsupported. (*Id.*). Forquer also noted concerns about Jones' classroom management skills and what, in his view, was an inconsistent learning environment in her classroom. (*Id.* at 51).

To evaluate more fully Jones' classroom teaching performance in the second semester, Forquer formally observed her class on February 17 and on March 8, 2010, and also frequently observed her class informally. (*Id.* at 52). Jones knew in advance when the formal observations would occur. (*Id.* at 52-53). After the first formal evaluation, Forquer met with Jones and made specific recommendations to Jones about how to improve her teaching performance and her classroom management. (*Id.* at 53, 56).

Following his second formal observation in March, Forquer completed his evaluation report. He concluded that Jones "has not displayed satisfactory performance levels in either lesson planning,

lesson presentation or in classroom management." (*Id.*. at 57-60 & Exs. 17). As a result, Forquer recommended that Jones not be re-employed in the 2010-2011 school year. (*Id.*).

After receiving an unsatisfactory evaluation from her principal, Jones requested a peer evaluation as permitted under the Toledo Plan. (*Id.* at 61 & Ex. 23.). Intern consulting teacher Tracey Preuss observed Jones' class twice, and provided her peer evaluation report on April 26, 2010. Preuss rated Jones' teaching performance as unsatisfactory, documenting deficiencies in the same areas Forquer noted – lesson planning, lesson presentation, and classroom management. She reported that Jones' lesson plans lacked important details, her grade records were incomplete, and her classroom lesson was scattered and difficult to follow. (*Id.* at 62-66 & Exs. 24, 25). Moreover, Jones' students "did not regard [Jones] as the instructional leader of her classroom." (*Id.* Ex. 25). They "threw items, refused to comply with directives . . . ran from her . . . shouted at her and talked back to her." (*Id.*).

Next, the Intern Board of Review, consisting of both Union and administrative representatives, reviewed the Jones' evaluations. (*Id.* at 66). "After careful deliberation and review" the Intern Board of Review recommended that the District not renew Jones' teaching contract. (*Id.* at 66-67 & Ex. 28).

The District adopted the Intern Board of Review's recommendation at the May 25, 2010 meeting of the Board of Education. (*Id.* at 67-68).

Jones then filed a grievance with her Union. The Union denied her grievance at step one. (*Id.*). Before the Union processed the grievance through step two, Jones filed a charge against the Union with the Ohio Civil Rights Commission (OCRC) alleging that the Union discriminated against her on the basis of her race by failing to represent her. (*Id.* Ex. 31). The OCRC "conducted an

investigation . . . gathered relevant information and secured witness statements," and found "no credible evidence" supporting Jones' allegations. (*Id.* Ex. 32). The OCRC dismissed Jones' charge against her Union. (*Id.*).

Jones also filed a charge with the OCRC against the District alleging her teaching contract was not renewed because of her race and her sex. (*Id.* Ex. 34). Once again, the OCRC "conducted an investigation . . . gathered relevant information and secured witness statements." (*Id.*). The OCRC found "no information or records that would raise an inference that [the District] unlawfully discriminated against [Jones]." (*Id.*). Specifically, the Commission found that Jones "was terminated due to unsatisfactory performance" and thus dismissed Jones' charge against the District. (*Id..*).

Jones next filed a complaint against Defendants in the Court of Common Pleas of Lucas County on June 22, 2011. (Doc. 18-1 Ex. A). After her counsel filed a motion to withdraw (*Id.* Ex. B), Jones requested that the court dismiss the litigation.  The court did so, without prejudice. (*Id.* Ex. C).

In the complaint that initiated this action, originally filed in state court on March 24, 2014, Jones alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., and adds state-law whistleblower and assault claims. (Doc. 11-1). In light of the Title VII claims, Defendants filed a notice of removal and I found that removal was proper. (Doc. 12).

## Standards of Review

After the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings. Fed R. Civ. P. 12(c). I analyze motions for judgment on the pleadings under the same standard as motions to dismiss pursuant to Rule 12(b)(6). *Sensations, Inc. v. City o/Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

4

In ruling on a motion for judgment on the pleadings, I "must construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine when the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

I "need not accept as true legal conclusions or unwarranted factual inferences." *JPMorgan Chase Bank, NA. v. Winget*, 510 F.3d 577, 581-82 (6th Cir. 2007). A complaint "does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

Summary judgment, on the other hand, is appropriate under Fed. R. Civ. P. 56 where, after the completion of discovery, the opposing party fails to show the existence of an essential element for which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. Celotex, 477 U.S. at 324.

I accept the non-movant's evidence as true and construe all evidence in its favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

### Discussion

As noted above, Jones alleges: 1) a claim for race and sex discrimination/harassment under Title VII; 2) a whistleblower claim; and 3) an assault claim. Defendants move for judgment on the pleadings and/or summary judgement as to all three claims.

With respect to Jones' Title VII claim, Defendants point out that Jones failed to obtain a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC) before filing this lawsuit. *See Lott v. Kmart*, 2013 WL 3337369, *1 (S.D. Ohio) ("Possession of [a] right-to-sue letter from the EEOC is a prerequisite to proceeding on a Title VII claim in district court."). They argue, and I agree, that this fact alone allows me to "dismiss the action without prejudice as premature." *Id.* (citing *Mitchell v. Chapman*, 343 F.3d 811, 820 n.10 (6th Cir. 2003)). In the interest of bringing this dispute to a long overdue conclusion, however, I will treat Defendants' motion regarding the Title VII claim as one for summary judgment and analyze it on the merits.

### A. The Title VII Claim[1]

Jones alleges:

> Defendant used Racial Discrimination in Employment Promotion Decisions in violation of Title VII of the Civil Rights Act of 1964. In the decision to terminate plaintiff [without just] cause.

> Defendant allowed plaintiff to by sexual harassment by [Gary] Forquer during her employment as a teacher.

(Doc. 18-1 ¶ 2).

---

[1] Whether Jones intended to assert her race and sex discrimination/harassment claims under Ohio state law rather than Title VII is immaterial. Ohio courts look to federal case law to decide state-law discrimination claims. *See Petersom v. Buckeye Steel Casings*, 133 Ohio App. 3d 715, 727 (Ohio Ct. App. 1999).

To analyze race and sex discrimination claims under Title VII, I apply the burden-shifting framework established in *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Texas Dept. Of Cmt. Affairs v. Burdine*, 450 U.S. 248, 248 (1981).

First, Jones must make her prima facie case. *See id.* The burden then shifts to Defendants to present legitimate, nondiscriminatory reasons for terminating her. *See id.* If Defendants carry that burden, Jones must show Defendants' reasons are pretext for unlawful discrimination. *See id.*

To set forth a prima facie case of race and/or sex discrimination, Jones must show: 1) she is a woman/member of a racial minority; 2) she suffered an adverse employment action; 3) she was qualified for the position; and 4) she was replaced by a non-protected person. *Brewer v. Cleveland Bd. of Ed.*, 122 Ohio App. 3d 378, 385 (citing *McDonnell Douglas Corp.*, 411 U.S. 792. "[A] plaintiff can also make out a prima facie case by showing, in addition to the first three elements, that a comparable non-protected person was treated better." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992).

Defendants argue Jones has not shown the third and fourth elements of her prima facie case. I agree Jones' prima facie case is lacking, but only with respect to the fourth element.

To establish that she was qualified for her position, Jones must show that her performance met the District's legitimate expectations at the time of her discharge. *Vincent v. Brewer Co.*, 514 F.3d 489, 495 (6th Cir. 2007). Defendants argue that her unsatisfactory work performance rendered her unqualified, and thus undermines her prima facie case. In the Sixth Circuit, however, courts treat unsatisfactory work performance as a legitimate, nondiscriminatory reason during the second stage of the Title VII inquiry, and not as a prima facie factor. *See Danielson v. City of Lorain*, 938 F.2d 681, 683 (6th Cir. 1991).

7

Jones states "she was qualified and was an excellent fifth, fourth and first grade teacher. No black or white principal had a problem with her or her work as a substitute teacher or under contract . . . when she taught summer school with a black [p]rincipal until she went to Lagrange." (Doc. 28 at 1). Defendants do not appear to dispute those assertions. Moreover, Jones worked for the District for more than a year before Forquer began seriously to question her performance. Accordingly, I find Jones has made a showing sufficient to establish that she was qualified.

With respect to the fourth element, on the other hand, I agree Jones falls short. Jones must produce evidence which at a minimum establishes: l) that she was a member of a protected class; and 2) that for the same or similar conduct, she was treated differently than similarly-situated, non-protected employees. *Mitchell*, 964 F.2d at 582-83. The parties to be compared must be similarly-situated in all respects. *Id.* At 583. That is they "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.*

Jones has not met her burden. She offers no proof that Defendants treated her differently than similarly-situated, non-protected employees. Indeed, seven other teachers, all of whom were white, were discharged on the same day she was. (Doc. 17-1 Ex. 17(L)). Jones therefore has not established the fourth element of her prima facie case.

Even if Jones could establish a prima facie case, Defendants have provided a a legitimate, nondiscriminatory reason for her discharge. It is undisputed that Jones' principal, a peer evaluator, her Union, the Intern Board of Review, and the Board of Education all deemed her performance unsatisfactory. (Doc. 17-1 at 50-68) The OCRC also found her performance unsatisfactory. (*Id.* Ex.

8

34). Defendants thus had ample basis for an "honest belief" Jones was performing poorly.[2] *See Smith v. Chrystler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998).

Poor performance is a legitimate reason for discharging an employee, *See Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 664 (6th Cir. 2000). Jones offers no evidence that reason was pretext for discrimination. *See Coleman v. Cleveland School Dist. Bd. Of Educ.*, 2004 WL 2491662, *5 (Ohio Ct. App.) ("Mere conjecture that the employer's stated reason is a pretext for intentional discrimination is an insufficient basis for the denial of a summary judgment motion made by the employer. To meet his or her burden in response to such a summary judgment motion, the plaintiff must produce some evidence that the employer's proffered reasons were factually untrue.").

Jones' Title VII claim therefore fails.

## B. The Whistleblower Claim

Jones appears to seek protection under the Ohio whistleblower statute, O.R.C. § 4113.52. An employee who makes a report pursuant to §§ 4113.52(A)(1) or (2) is protected from any disciplinary or retaliatory action. O.R.C. § 4113.52(B). "If an employer takes any disciplinary or retaliatory action against an employee as a result of the employee's having filed a report under division (A) of this section, the employee may bring a civil action for appropriate injunctive relief" or for other remedies provided in the statute. O.R.C. § 4113.52(D).

Jones, however, fails to allege any facts suggesting that she followed the statutory procedure set forth in § 4113.52(A)(1)(a). It provides, in relevant part:

---

[2] The fact that Jones disagrees with the assessment of her performance is irrelevant. A plaintiff must show "more than a dispute over the facts upon which the discharge was based." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001).

If an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that the employee's employer has authority to correct, and the employee reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or office a written report that provides sufficient detail to identify and describe the violation.

Compliance with this procedure is required in order to claim whistleblower protection. *See* O.R.C. § 4113.52(D).

Jones does not allege that she gave oral or written notice of "a violation of any state or federal statute or any ordinance or regulation of a political subdivision ... that the employee's employer has authority to correct, and the employee reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution." *See* O.R.C. § 4113.52(A)(I)(a).

Even if she had alleged that she gave such notice, her claim is barred because an employee must bring a whistleblower action "within one hundred eighty [180] days after the date the disciplinary or retaliatory action was taken, in a court of common pleas in accordance with the Rules of Civil Procedure." *See* O.R.C. § 4113.52(D). Jones was terminated in May 2010, yet she did not bring her whistleblower claim until almost four years later.

Accordingly, Jones' whistleblower claim fails as a matter of law.

10

## C. The Assault Claim

Finally, Jones appears to allege that Forquer "assaulted" her. She points to no evidence to support that allegation. In any event, I need not wade into the record on this point because the one-year statute of limitations bars this claim. *See* O.R.C. § 2305.111(B).

Jones alleges the assault occurred at some point before her May 2010 termination. Her initial complaint did not mention an assault claim. (Doc. 18-1). She filed the complaint that initiated this action on March 28, 2014. At a minimum, that is nearly four years after date on which the alleged assault could have occurred, well outside the limitations period.

Accordingly, the assault claim is defective.

## Conclusion

For the reasons above, summary judgment and judgment on the pleadings are warranted.

It is, therefore

ORDERED THAT Defendants' motion for summary judgment and/or judgment on the pleadings (Doc. 18) be, and the same hereby is, granted.

An appeal from this decision could not be taken in good faith, and shall not be allowed without prepayment of the required filing fee.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

11